UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,     :
    :
          v.     :     **MEMORANDUM & ORDER**
    :     15-CR-624 (WFK)
JOHN WOLF,     :
    :
        Defendant.     :
-----------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 17, 2017, John Wolf ("Defendant") pled guilty to Counts One and Two of the Superseding Information. Count One charges Defendant with Conspiracy to Possess with Intent to Distribute Methamphetamine, and Count Two charges Defendant with Possession of Child Pornography. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 121 months of incarceration on Count One and to 121 months of incarceration on Count Two. Count Two shall run concurrently to Count One. Defendant is also hereby sentenced to 10 years of supervised release, mandatory restitution in an amount to be determined by the Court, forfeiture as set forth in the Plea Agreement and the Order of Forfeiture, payment of a $5,000.00 special assessment pursuant to 18 U.S.C. § 1304, and payment of a $200.00 special assessment.

## BACKGROUND

On December 4, 2015, the United States filed an Indictment charging Defendant with: (1) one count of Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); (2) one count of Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) one count of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); and (4) one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Indictment, ECF No. 11. On October 17, 2017, the United States filed a Superseding Information, charging Defendant with one count of Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(B)(viii), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B)

1

and 2252(b)(2). Superseding Information, ECF No. 38. The same day, Defendant pled guilty to Counts One and Two of the Superseding Information. Plea Agreement, ECF No. 41.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.     Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be 'a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a).'" *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (quoting *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006)). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II.     Analysis

####      A.     The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 19, 1956 in Port Huron, Michigan. Presentence Investigation Report ("PSR") ¶ 65, ECF No. 55. Defendant is the youngest of four children, all boys, born to the marital union of Carl Denton Wolf and Betty E. Nasmith (nee) Carlson. *Id.* Defendant's father, a retired landscape architect, died in 2002 from diabetes, and his mother, a retired librarian, died in 2015 from leukemia. *Id.* Defendant has three older brothers. *Id.* ¶ 66. His oldest brother, Carl Denton Wolf, resides in Michigan and is a former tax partner at Deloitte and Touche. *Id.*; *see also* Def. Sentencing Mem. ("Def. Mem.") at Ex. 16, ECF No. 58. Robert Carlson Wolf resides in Tennessee with his wife and is a retired police officer for Laverne, Tennessee. PSR ¶ 66; Def. Objs. to Presentence Investigation Report ("Def. Obj. Letter"), ECF No. 66-1; Addendum to the PSR ("PSR Addendum") at 2, ECF No. 64. William Moore Wolf resides in Arizona and is a vascular surgeon. PSR ¶ 66. Defendant's brothers are aware of his arrest and conviction, and they remain supportive. *Id.* Notably, each of Defendant's brothers wrote a letter in support of Defendant in advance of his sentencing. *See* Def. Mem., Exs. 15-17.

Defendant's parents separated when Defendant was approximately 16-years-old and ultimately divorced. PSR ¶ 67. Before that time, Defendant advised he was raised in an intact, upper-middle-income home. *Id.* His mother remarried two years later to Mr. Augustus Nasmith, an attorney. *Id.* Defendant reported he and his brothers were torn by their parents' separation, as they all loved the father, even though Defendant noted his father was not "warm." *Id.* ¶¶ 67-68. Defendant advised he felt mentally abused by his father, calling him "very authoritarian," but he was always close with his mother. *Id.* ¶¶ 68-69.

Defendant was in a pilot gifted program in high school. *Id.* ¶ 72. Although he reported being overweight as a child, Defendant lost 40 pounds at age 14 and was elected class president. *Id.* ¶ 73. At age 18, Defendant moved to Houston and enrolled in a one-year nursing program. *Id.* ¶¶ 77, 115; Def. Obj. Letter at 3. He then moved to New York in 1977 and attended Queens College in Queens, New York, graduating with a bachelor's degree in anthropology with honors. PSR ¶ 114. In 1984, Defendant received his degree in dentistry from New York University, College of Dentistry and opened an adult dental practice in New York, New York. *Id.* ¶¶ 113, 119. Defendant's license to practice dentistry expired in 2016, and he has not renewed it while incarcerated for the instant offense. *Id.* ¶ 117.

Defendant reported growing up isolated because his mother took college classes three nights per week. *Id.* ¶ 68. Defendant and his brother Robert were often left home alone. *Id.* ¶ 70. At age 12, Defendant reported he was sexually abused by Robert, approximately age 16 at the time. *Id.* Defendant advised Robert approached him one day and asked Defendant to have "oral contact" with him. *Id.* Refusing at first, Defendant advised he was overweight and self-conscious. *Id.* They proceeded to engage in mutual masturbation and oral sex for approximately four years. *Id.* Defendant advised they never anally penetrated each other, and his brother stopped abusing Defendant when Defendant informed the family he was homosexual. *Id.*

Defendant has had four long-term relationships. *Id.* ¶ 74. From 1979 to 1993, Defendant was romantically involved with Paul J. Barile, who died from complications related to human immunodeficiency virus ("HIV") in 1993. *Id.* From 1993 to 1996, Defendant was involved with Jose De La Cruz, who died from measles encephalitis in 1998. *Id.* In 1998, Defendant became romantically involved with Robert Valenciano. *Id.* Defendant recalled the relationship ended in 2001 when Mr. Valenciano turned to abuse illicit substances after losing his job. *Id.*

Defendant has been romantically involved with Scott Alexis Tacoronte since 2001. *Id.* ¶ 75. They were first married in 2004 in San Francisco, California, and were again married on September 19, 2014, in New York, New York. *Id.* Mr. Tacoronte is employed as a Spanish interpreter, although he is not working full-time and is currently collecting food stamps because of Defendant's instant arrest. *Id.* ¶¶ 75-76. In a telephonic interview, Mr. Tacoronte described Defendant as a "gentle, wonderful, and upbeat soul," although he advised their relationship had been tested given Defendant's drug addiction. *Id.* ¶ 76. Mr. Tacoronte speculated Defendant became involved in drug distribution because of Defendant's own drug addiction but expressed surprise by Defendant's possession of child pornography. *Id.* Mr. Tacoronte believes Defendant's sexual abuse by his brother contributed to Defendant's crime and noted Defendant never acted inappropriately towards a child in his presence. *Id.* Mr. Tacoronte believes Defendant's arrest saved Defendant's life because he was "on a path to death." *Id.*

Defendant has several medical conditions impacting his health. Defendant advised he was diagnosed with hypertension in the early 2000s. *Id.* ¶ 85. He was also diagnosed with high triglycerides and hyperlipidemia. *Id.* In September 2002, Defendant was diagnosed with a potentially terminal illness. *Id.* ¶ 86. In 2005, a cardiologist found Defendant had a distal heart vessel that was starting to close. *Id.* ¶ 88. In 2006, Defendant was diagnosed with sleep apnea, and in 2007, an enlarged prostate. *Id.* ¶¶ 89-90. For these conditions, Defendant has been prescribed or has taken Metropolol, Lopressor, Lopid, Morphine, Percocet, Vicodin, Aspirin, and Flomax. *Id.* ¶¶ 85-90. In January 2017, Defendant noticed his left nipple was inverted and was subsequently diagnosed with stage 2 breast cancer. *Id.* ¶ 91; Obj. Letter at 4; *see also* Def. Sentencing Mem. Supplement ("Def. Supplement"), ECF No. 59. Defendant underwent radiation therapy, chemotherapy, and ultimately a double mastectomy at Kingsbrook Jewish

Medical Center in Brooklyn, New York. PSR ¶ 91. According to Metropolitan Detention Center ("MDC") medical records, Defendant has been diagnosed with the following conditions: hypothyroidism; malignant neoplasm of male breast; obesity; presbyopia; acute sinusitis; and low back pain. *Id.* ¶ 92.

At various points in his life, Defendant has received mental health and substance abuse counseling. Defendant advised he received twelve weeks of bereavement counseling following the death of his partner, Paul, in 1993. *Id.* ¶ 95. Defendant advised he has abused alcohol at various periods in his life, primarily in his teenage years and twenties, but his consumption was limited to once a week in the past fifteen years. *Id.* ¶ 107. Defendant also reported smoking marijuana for the first time at age 14 and did so daily throughout high school but has not smoked since 2012. *Id.* ¶ 109. Defendant first used methamphetamine in 2000 but did not begin using it weekly until 2001. *Id.* ¶ 110. Defendant advised he used methamphetamine four days per week until Mr. Tacoronte staged an intervention in 2010, and Defendant agreed to surrender his license to practice dentistry and to attend treatment. *Id.* Defendant participated in a 30-day inpatient drug treatment program at Tully Hill Treatment Center in Tully Hill, New York. *Id.* ¶ 96. Thereafter, Defendant commenced outpatient treatment with Mr. Michael Nina, a psychologist reportedly specializing in methamphetamine addiction, in New York, New York. *Id.* Defendant advised he began using methamphetamine again in 2011 until his instant arrest. *Id.* ¶ 110.

Defense counsel requested no questions be posed to Defendant regarding his sexual history or preferences during his presentence interview. *Id.* ¶ 82. Defendant did, however, provide significant detail regarding his sexual history during a forensic psychiatric evaluation with Dr. Alexander Sasha Bardey. *Id.* ¶¶ 83, 99; Def. Mem. Ex. 23 (Forensic Psychiatric Report ("FPR")) at 18. Defendant reported participating in the following behaviors: exhibitionism from

6

ages 19 to 55; voyeurism from ages 14 to 17; professional sexual misconduct from ages 28 to 57; soliciting prostitutes from ages 52 to 59; sexual affairs from ages 19 to 59; sex with strangers from ages 17 to 59; and fetishism from ages 13 to 59. PSR ¶ 83; FPR at 18. Defendant reported he never had sexual fantasies about becoming sexually aroused by touching a child or attempting to meet up with children or teenagers for sexual arousal. PSR ¶ 84. In his evaluation, Defendant advised child pornography became interesting to him "because the people I was sexually attracted to" were interested in the material. FPR at 10.

Dr. Bardey's evaluation revealed Defendant "appears somewhat reluctant to recognize faults or problems in himself." *Id.* ¶ 100; FPR at 15. As such, Dr. Bardey advised "the interpretive hypotheses in this report should be reviewed with caution, as the results may underrepresent the extent and degree of any significant findings in certain areas due to the defendant's difficulties in acknowledging negative or unpleasant aspects of himself." PSR ¶ 100; FPR at 15. Additionally, Dr. Bardey states in his evaluation Defendant's dangerous behavior—including unprotected sex and viewing child pornography—reveal impaired judgment common of methamphetamine abuse. PSR ¶ 102. According to the evaluation, Defendant meets the DSM-5 criteria for Substance Use Disorder and for Other Specified Paraphilic Disorder. *Id.* ¶¶ 102-03; FPR at 21-22.

Although the objective results of Defendant's psychosexual testing revealed Defendant had a chief sexual attraction to both males and females ages 14 to 17, followed by an interest in males and females ages 6 to 13 and males age 5 and younger, Dr. Bardey concluded absent substance use, Defendant is not at risk of engaging in deviant sexual behaviors. *Id.* ¶ 103.

Defendant has been incarcerated since November 20, 2015 for the instant offense. PSR ¶ 79. Defendant was incarcerated at Kingsbrook Jewish Medical Center in Brooklyn, New York,

from November 28, 2017 to mid-October 2018 in order to receive medical treatment as discussed above, and was detained at MDC at all other times. *Id.* Defendant completed several educational courses at MDC and has no disciplinary history. *Id.* Prior to his arrest, Defendant and Mr. Tacoronte resided at 15 Charles Street, Apartment 7C in New York, New York. *Id.* ¶ 78. Defendant advised he purchased the residence for $153,000.00 in 1993 and it was sold for $1,400,000.00 in 2016. *Id.* According to Defendant, money from the sale was used to pay for the outstanding mortgage, to pay off a home equity line of credit, to pay for his defense attorney and the psychological evaluation for the instant offense, and to pay the Internal Revenue Service for outstanding debt. *Id.* ¶¶ 79, 124.

Defendant was arrested at age 20 for petit larceny when he and another individual were stopped by a security guard stealing from a restaurant. *Id.* ¶ 58. Defendant has no other arrests on his record. *Id.* ¶¶ 57-63. Additionally, the Accurint database revealed numerous tax liens and judgments against Defendant. *Id.* ¶ 119. Defendant also reported he failed to file personal income tax returns for 2009 through 2013 tax years. *Id.* ¶ 122.

Regarding the instant offense, in March 2015, a confidential informant was arrested at John F. Kennedy International Airport in Queens, New York, while transporting 1,844 grams of methamphetamine from California. *Id.* ¶ 5. Following his arrest, the informant met with representatives from the United States Attorney's Office for the Eastern District of New York and agents from the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration. *Id.* During those meetings, the informant advised Defendant, a formal criminal associate of the informant, was involved in significant illegal conduct, including: (1) narcotics trafficking, involving the use and distribution of methamphetamine; and (2) possession and production of child pornography. *Id.* ¶ 6. Defendant asserts he was not motivated to possess and

distribute narcotics for financial gain but rather by his own addiction to methamphetamine. PSR Addendum at 1.

From October 2015 to November 2015, at the direction and under the supervision of law enforcement, the informant consensually recorded a number of conversations between the informant and the defendant that took place at Defendant's dental office. *Id.* ¶ 10. During these meetings, the informant recorded Defendant discussing, among other things: (1) Defendant's current and historical use and distribution of methamphetamine; (2) his participation in bestiality; (3) his interest in child pornography; and (4) his risk to the general public. *Id.* Defendant asserts statements regarding "his participation in bestiality was not truthful and was the product of his intoxication and the impairment of his brain caused by his addiction." PSR Addendum at 2. During the conversations, Defendant admitted to the informant he continued to use and distribute narcotics, including methamphetamine. PSR ¶ 11. Defendant was also recorded discussing a sexual encounter with an adult male in which Defendant claimed to have administered ketamine to sexually assault him. *Id.* ¶ 13. Defendant also stated he punctured condoms when having sex with other individuals. *Id.* Defendant again asserts these statements were not true and "were the product of his intoxication and the impairment of his brain caused by his addiction," and "he never perpetrated a sexual assault against anyone." PSR Addendum at 2.

On November 11, 2015, the informant introduced an undercover FBI agent to Defendant at Defendant's office as the informant's "roommate." *Id.* ¶¶ 14-15. The undercover agent contacted Defendant via text message on November 15, 2015, indicating he received Defendant's number from the informant and that the agent wanted to stop by—to which Defendant agreed. *Id.* ¶ 16. On November 16, 2015, the agent, who was wearing a recording device, met with Defendant in Defendant's office. *Id.* ¶ 17. Defendant informed the agent he

had previously used the basement of the office for sex parties, had preferred more perverted child pornography sites, and had possessed child pornography on a flash drive. *Id.* ¶¶ 17-18. Without asking for anything in return from the agent, Defendant offered the undercover agent the flash drive and offered to show the agent some of the child pornography from the flash drive. *Id.* ¶ 18. Defendant then proceeded to project child pornography on a large screen television from the flash drive for the agent to view. *Id.* ¶ 19. In general, the child pornography depicted young girls, ranging in approximate age of five to thirteen years old, engaging in sexual acts with other children and adults. *Id.* Videos contained, for example, a minor girl being digitally penetrated while her hands and legs were tied to a stick and broom, toddlers being sexually abused by adult men, and prepubescent girls performing oral sex on each other. *Id.* Defendant played child pornography for approximately thirty-five minutes. *Id.*

Defendant transferred approximately twenty-three video files containing child pornography to an extra flash drive he had, and gave the flash drive to the undercover agent. *Id.* ¶ 20. The investigating agent reviewed this flash drive and discovered twenty-two files were viewable and contained child pornography. *Id.* ¶ 21. The files generally depicted young prepubescent children engaged in sexually explicit conduct. *See id.* (discussing explicit examples of three clips contained on the flash drive).

On November 20, 2015, Defendant was arrested for the instant offense at his former dental office on 212 West 15th Street, Ground Floor, New York, New York. *Id.* ¶ 22. Defendant made no post-arrest statements. *Id.* A forensic analysis of items seized from Defendant on November 20, 2015 revealed 660 images and 244 videos of child pornography, which previously traveled via the internet, in interstate and foreign commerce, and which depicted children engaged in sexually explicit activities. *Id.* ¶ 23. There is no evidence Defendant produced child

pornography, and there is no evidence that depicted any of the reported violent acts Defendant alleged to have committed to the undercover agent. *Id.* Defendant asserts he has no knowledge of storing child pornography on any computer; all the child pornography was located on an external USB drive. PSR Addendum at 2.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant pled guilty to two very serious offenses. Defendant's conspiracy to possess with intent to distribute methamphetamine endangers the community by promoting the use and distribution of an illicit and dangerous substance. Defendant's possession of child pornography "harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Defendant possessed child pornography that depicted toddlers and children being subjected to sexual abuse. Further, Defendant's willingness to share it with another individual reflects a disregard for the seriousness of the harm caused by the videos and images in his possession. The Court also finds a substantial need for deterrence, as a violation of child pornography laws harms society and, more importantly, contributes to the re-victimization of the most vulnerable members of society: children who have been videotaped while being sexually abused by individuals who know a market exists for such images. *See, e.g., United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013) ("Not only are children seriously harmed—

physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse."); *cf. United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming sentence of 120 months of imprisonment for receipt, distribution, and possession of child pornography where district court had observed that the defendant's "crimes are not 'victimless' because they 'creat[e] a market' for child pornography and thus harm children, 'scarr[ing] [them] for life'").

The Court's sentence recognizes the seriousness of Defendant's offenses and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and from turning to drugs and illicit substances to seek relief. Finally, it also considers Defendant's medical condition, personal history, and the support of his family and friends.

## C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of conspiracy to possess with intent to distribute methamphetamine, for which he faces a statutory minimum term of imprisonment of five years and a maximum term of imprisonment of forty years. 21 U.S.C. § 841(b)(1)(B). Under Count One, Defendant also faces: a minimum term of supervised release of four years, *id.* § 841(b)(1)(B); a maximum fine in the amount of $5,000,000.00, *id.* § 3571(b); and a mandatory $100.00 special assessment, 18 U.S.C. § 3013.

Defendant also pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), for which he faces a maximum term of imprisonment of twenty years. 18 U.S.C. § 2252(b)(2). Defendant also faces: a minimum term of supervised release of

12

five years and a maximum term of life, *id.* § 3583(k)[1]; a maximum fine in the amount of

$250,000.00, *id.* § 3571(b)(3); a mandatory $100.00 special assessment, 18 U.S.C. § 3013, and a

$5,000.00 special assessment pursuant to the Justice for Victims of Trafficking Act of 2015, *id.* §

3014. Defendant also faces mandatory restitution, 18 U.S.C. § 3663A, and criminal forfeiture.

Plea Agreement ¶¶ 6-11; Order of Forfeiture, ECF No. 47. Defendant must also comply with sex

offender registration pursuant to the Sex Offender Registration and Notification Act, 34 U.S.C. §

20901 *et seq.*

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the

sentencing range established for . . . the applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for violations of 21 U.S.C. § 841(a)(1) is Guideline §

2D1.1(a)(5), which applies to unlawful manufacturing, importing, exporting, or trafficking

(including possession with intent to commit these offenses), and attempt or conspiracy to commit

these offenses. *See* United States Sentencing Commission, Guidelines Manual ("USSG") §

2D1.1. Guideline § 2D1.1(a)(5) references the drug quantity table at Guideline § 2D1.1(c).

Guideline § 2D1.1(c)(8) provides a base offense level of 24 because Defendant conspired to

possess more than 50 grams, but less than 200 grams, of methamphetamine. There are no

specific offense characteristics relevant to Defendant for Count One. Probation determined

Defendant has not satisfied all five mitigating factors of Guideline § 5C1.2 because he has not

provided all information concerning his involvement in this offense to the Government, pursuant

---

[1] Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

to § 5C1.2(a)(5). PSR ¶ 34. Moreover, no reduction under Guideline 2D1.1(b)(18) is warranted because Defendant stipulated in his plea agreement he is not eligible for a safety valve, as he has stipulated to a role enhancement. *Id.* Probation also determined neither an enhancement for use of violence pursuant to Guideline § 2D1.1(b)(2) nor a two-level aggravating role enhancement pursuant to Guideline § 3B1.1(c) apply. *Id.* ¶ 22. Probation proposed no further adjustments, making Defendant's total offense level 24 for Count One.

The applicable Guideline for 18 U.S.C. § 2252(a)(4)(B) provides a base offense level of 18. USSG § 2G2.2(a)(1). Since Defendant knowingly engaged in distribution (by producing a flash drive containing 22 videos of child pornography for the undercover agent), two levels are added. *Id.* § 2G2.2(b)(3)(F). Since the material involved a prepubescent minor or a minor under the age of 12, two levels are added. *Id.* § 2G2.2(b)(2). Because Defendant possessed images depicting sadistic and/or masochistic conduct or other depictions of violence, and because a number of images depicted sexual abuse of prepubescent children, four more levels are added. *Id.* § 2G2.2(b)(4). Two more levels are added because Defendant used a computer to receive and store the images. *Id.* § 2G2.2(b)(6). Since the offense involved the possession of at least 660 still images and 244 video clips of child pornography, the offense level is increased by five more levels. *Id.* § 2G2.2(b)(7)(D). With these adjustments, Defendant's adjusted offense level is 33.

Defendant's crimes cannot be grouped together under the Sentencing Guidelines because each Count represents a different societal harm and different acts. To determine Defendant's multiple count adjustment, units are assigned pursuant to Guidelines §§ 3D1.4(a), (b), and (c). 1.0 Unit was assigned to Count 2 because it was the highest offense level, making the greater of the adjusted offense levels 33. Here, because the lower offense level is 9 or more levels less

serious, there is no increase in offense level, and the combined adjusted offense level is 33. USSG § 3D1.4.

Because Defendant has clearly demonstrated acceptance of responsibility for the offense, the offense level is decreased by two levels. *Id.* § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a guilty plea, the offense level is decreased by one more level. *Id.* § 3E1.1(b). Accordingly, Defendant's total offense level is 30.

Given a total offense level of 30 and a criminal history category of I, the Guidelines suggest a term of imprisonment of 97-121 months. USSG Ch. 5, Part A. The Guidelines further recommend a term of supervised release of five years to life, USSG § 5D1.2(b)(2); a fine in the amount of between $30,000.00 and $5,000,000.00, *id.* §§ 5E1.2(c)(3)–(4); and the payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines also suggest Defendant is ineligible for probation. *Id.* §§ 5B1.1(b)(2)–(3). Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 131. All parties agree the Guidelines produce a total offense level of 30, which elicits a range of imprisonment of 97-121 months.

Defense counsel does not dispute the Guidelines range calculation but requests the Court depart or vary from the Guidelines range and sentence Defendant to the five-year mandatory minimum. Def. Mem. at 1. Defendant first argues application of Guideline § 2G2.2 results in a "manifestly unjust" Guidelines range for Defendant, in light of *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). Def. Mem. at 17-21. Defendant contends the *Dorvee* Court "critiqued the enhancements that are a part of the Guideline as having been cobbled together, not through the customary ... empirical analysis, but through a political process that did not take due care for the distinctions between 'serious commercial distributors of child pornography' and the 'run of the mill users.'" *Id.* at 17 (quoting *Dorvee*, 616 F.3d at 186). Defendant also refers to a 2012 report

from the United States Sentencing Commission recommending changes to Guideline § 2G2.2, arguing had the report been adopted, his Sentencing Guideline range would likely be lower. *Id.* at 21. Indeed, Defendant argues, his case could be distinguished from individuals who have file sharing networks, which he avers he did not. *Id.* at 21-22. According to Defendant, such a change could have permitted Probation and the Government to "treat him as the individual he is—a child sex abuse victim and crystal methamphetamine addict in need of, and ready for, meaningful treatment—a man who as a result of his trauma and his addiction fell upon and used child pornography." *Id.* at 23. But "legislators have not yet adopted the recommendations of the Commission, and so the out-dated iteration of § 2G2.2 must be applied." *Id.* at 22.

In response, the Government argues *Dorvee* is distinguishable from the instant case because Dorvee argued the Guidelines in the PSR were incorrectly calculated, whereas Defendant does not challenge the calculations here. Gov't Mem. at 5. Further, the Guidelines calculation in this case is well below the statutory maximum and the 240-month Guidelines sentence at issue in *Dorvee*. *Id.* Following *Dorvee*, the Second Circuit has continued to uphold Guideline-range sentences for child pornography crimes, particularly when the sentence was not near the statutory maximum. *Compare United States v. Gill*, 739 F. App'x 75, 76-77 (2d Cir. 2018) (summary order) (affirming 121-month sentence for receipt of child pornography as substantively reasonable because unlike in *Dorvee*, "neither the advisory [Guidelines] range... nor Gill's sentence was 'near or exceeding the statutory maximum.'" (quoting *Dorvee*, 616 F.3d at 186)), *and United States v. Chow*, 441 F. App'x 44, 45-46 (2d Cir. 2011) (summary order) (affirming 84-month sentence for attempted receipt and possession of child pornography as procedurally and substantively reasonable, despite *Dorvee* argument), *with United States v. Jenkins*, 854 F.3d 181, 185-89 (2d Cir. 2017) (vacating 225-month sentence for possession and

transportation of child pornography, 15 months below the statutory maximum, as shockingly high, even though the Guidelines calculation resulted in a range above statutory maximum).

The Court finds particularly informative the decision in *United States v. Ryan*, 406 F. App'x 565 (2d Cir. 2011) (summary order). There, the Second Circuit affirmed a 90-month sentence for transporting child pornography and deemed it substantively reasonable. *Id.* at 567. Specifically:

> The case before us is distinguishable [from *Dorvee*] in many ways. We are faced with a sentence which is nowhere near the statutory maximum, and is actually nearer the five-year statutory minimum. While that consideration alone does not end the analysis, the district court also undertook a detailed explanation of Ryan's offense in considering the type of pictures viewed, the extent of the crime committed, and the impact on the children who were victimized in the making of some of the pictures; it also considered [the defendant's] age and medical conditions, and his contributions to his family, his friends, and society at large. Moreover, the court nowhere exhibited a mistaken assumption that [the defendant] was at risk of actually engaging in the sexual assault of a child as the court in *Dorvee* had discussed. . . . Finally, the court below was not working under a mistaken Guidelines range. Accordingly, *Dorvee* does not provide [the defendant's] argument that his sentence is substantively unreasonable much support.

*Id.* at 568; *see also United States v. Sawyer*, 672 F. App'x 63 (2d Cir. 2016) (summary order) (finding 30-year term of imprisonment substantively unreasonable because of "the district court's overreliance on Sawyer's danger to the community, and its failure to afford sufficient weight to Sawyer's history and personal characteristics"). Here, as in *Ryan*, the undisputed advisory Guidelines range is between 97 months and 121 months—far closer to the statutory minimum than the statutory maximum of one of Defendant's offenses. Moreover, before sentencing Defendant, the Court has considered in detail Defendant's submissions to the Court, as well as Defendant's offenses, his medical condition, his contribution to the community, and his support network.

Probation recommends a sentence of 97 months incarceration, to run concurrently on each count, followed by five years of supervised release with special conditions. Probation

Sentencing Recommendation at 1, ECF No. 55-1. Further, Probation argues "stringent special conditions" are necessary to ensure the continued rehabilitation of Defendant, his reintegration into society, and also to address concerns for societal safety upon his release. *Id.* at 4.

The Government requests a sentence within the Guidelines range of 97 to 121 months. Gov't Mem. at 4-5. The Government notes Defendant distributed dangerous drugs and "admitted on a consensual recording that he has used drugs to commit sexual assault." *Id.* at 4. Defendant also possessed videos of child pornography, and "a willingness to disseminate child pornography is of grave consequence." *Id.* The Government argues the record reflects Defendant "considered himself above the law" and, in his letter to the Court, "devoted only two sentences to the victims of child pornography and instead focused almost exclusively on tallying the ways in which he has been victimized and making various excuses for his choices." *Id.* The Government acknowledges this is Defendant's first offense, and Defendant has faced serious challenges in his life. *Id.* at 4-5. Nevertheless, according to the Government, Defendant has also been afforded privileges and opportunities, yet still chose to commit several crimes. *Id.* at 4.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Defendant seeks a below-Guidelines sentence, and although Defendant does not argue for a downward departure or variance under any specific policy statement issued by the Sentencing Commission, the Court addresses his arguments for a variance here.

Defendant urges the Court to exercise its discretion to vary below the Guidelines in light of Defendant's severe methamphetamine addiction, his medical condition and cancer diagnosis, and his proffer to the Government. Def. Mem. at 26-28, 32-34. Defendant also argues his "good

character warrants a variance from the Guidelines" as evidenced by the letters of support from his friends and family and the several courses he has taken while at MDC. *Id.* at 35.

Regarding his substance abuse, Defendant argues "[h]is judgment was so impaired that conduct that would otherwise be reprehensible to him was conduct that he could engage in without self-examination, empathy for others, or guilt." *Id.* at 27. Dr. Bardey's Forensic Psychiatric Report concluded Defendant meets the DSM-5 criteria for Substance Use Disorder (with which Defendant was previously diagnosed in 2010) and for Other Paraphilic Disorder. *Id.* Dr. Bardey also concluded: "It is my opinion that [Defendant's] risk to society would be completely mitigated if he were to remain free of substances, particularly methamphetamine." *Id.* at 29. Ultimately, counsel for Defendant "submits that his addiction mitigates his criminal conduct and justifies a variance from a Guideline range produced by a Guideline that the Second Circuit has suggested can spawn injustice." *Id.* at 30.

Defendant next argues a variance is appropriate here because there is no evidence he ever sexually abused a child. *Id.* Defendant points to the fact he did not agree to a proposed scheme to drug and sexually abuse a child when posed by the undercover agent to support his claim he has not and would not abuse a child. *Id.* at 31.[2] Defendant's discussion about being turned on by child pornography was in response to the undercover agent's statements, which, Defendant contends, support his argument he was interested in child pornography only to the extent his potential adult sexual partners were interested in it. *Id.*

Next, Defendant argues his cancer diagnosis while an inmate at MDC justifies a variance from the Guidelines. Defendant's breast cancer tumor will require him to continue receiving

---

[2] Defendant asks this Court to give a "high degree of reliability" to these particular statements because they were made at time "when he did not know he was being recorded," yet Defendant's other statements made in similar situations regarding bestiality and sexual assault should not. *Compare* Def. Mem. at 31, *with* Def. Obj. Letter at 2.

medical attention while incarcerated, and Defendant stresses the need for responsive medical treatment for his condition. *Id.* at 35. "As an HIV positive cancer patient, his physical health is extremely vulnerable and requires vigilant monitoring," according to defense counsel. *Id. See generally* Def. Supplement.

Finally, Defendant argues his good character, but for his addiction, warrants a variance. Def. Mem. at 35. Defendant points to the extensive letters from friends and family in support to reflect he was "devoted" to helping his community. *Id.* at 39. While sober, Defendant notes he has completed several courses while at MDC and also taught certain courses. *Id.* at 40. In his letter to the Court, Defendant writes "[t]he most profound pain affected my spouse and my family" and accepts responsibility for his offenses. *Id.* Ex. 1 at 5.

In response, the Government acknowledges Defendant's medical condition and personal history but argues his background does not warrant a five-year sentence. Gov't Mem. at 4. Specifically, the Government points to the "ongoing suffering that is likely to be endured by the victims of the defendant's misconduct for years to come," and a below-Guidelines sentence in this case "would send the message that collectors of violent child pornography can expect lenient treatment at the expense of children." *Id.* at 4-5. The Government also notes child pornography defendants commonly, and indeed nearly always, request lenient sentences given a lack of criminal history, psychological makeup, and extraordinary circumstances. *Id.*

Probation "takes no position with regard to these proposed variances." PSR Addendum at 2. Probation notes Guideline § 2G2.2 should be applied with great care following *Dorvee*, but that a Guidelines-range sentence is appropriate here. PSR ¶ 157; Probation Sentencing Recommendation at 1. Probation also identifies two factors that may warrant an upward

departure, although it advocates neither. *See* PSR ¶¶ 155-57 (noting Application Note 6(b) of Guideline § 2G2.2 and Guideline § 5K2.0 may warrant upward departures).

### F.     The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G.     The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As set forth in the Plea Agreement, restitution is mandatory pursuant to 18 U.S.C. § 2259 in the full amount of the victims' losses attributable to Defendant's activities. Plea Agreement ¶¶ 12-15; 18 U.S.C. § 3663A. The Government is still compiling restitution requests and asks this Court to set May 31, 2019 as the date for final determination of restitution. Gov't Mem. at 5.

## CONCLUSION

Defendant is hereby sentenced to 121 months of incarceration on Count One and to 121 months of incarceration on Count Two. Count Two shall run concurrently to Count One. Defendant is also sentenced to 10 years of supervised release with special conditions, forfeiture as set forth in the Plea Agreement and the Order of Forfeiture, ECF No. 47, payment of a $5,000.00 special assessment under 18 U.S.C. § 1304, and payment of a $200.00 special assessment. The Court also sets May 31, 2019, as the date for final determination of restitution

in this case.  This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum attached thereto, barring any errors contained therein, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 26, 2019
      Brooklyn, New York